E-FILED
Friday, 06 June, 2008 02:36:34 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Community Medical Center of Western Illinois Inc., | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 07-4029 |
| | ) | |
| Alliance Imaging Inc., | ) | |
| Defendant | ) | |

| | | |
|---|---|---|
| Alliance Imaging, Inc., | ) | |
| Counter-Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OSF Healthcare System, | ) | |
| Counter-Defendant | ) | |

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court are the Defendant's Motion for Partial Summary Judgment (Doc. #16) and the Plaintiff's Cross Motion for Summary Judgment (Doc. #23). The motions are fully briefed and I have carefully considered the arguments and evidence of the parties. For the following reasons, the Defendant's motion is granted and the Plaintiff's motion is denied.

**JURISDICTION**

This case was filed in Warren County, Illinois, on May 3, 2007. It was removed by Defendant to this Court on June 12, 2007, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1446.

Plaintiff Community Medical Center of Western Illinois, Inc., is a corporation under the laws of Illinois with its principal place of business and its headquarters in Monmouth, Illinois. Defendant Alliance Imaging, Inc., is a corporation under the laws of Delaware with its headquarters and principal place of business in Anaheim, California. The amount in controversy in the dispute between the two corporations exceeds $75,000.

Because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has original jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332(a)(1).

The existence of diversity jurisdiction is not affected by the fact that Defendant Alliance Imaging has brought a third party action against OSF Healthcare System, which is not diverse from Plaintiff. "[A] third party's lack of diversity [will not] destroy federal subject matter jurisdiction for purposes of removal if it otherwise exists on the basis of the citizenship of or the claims between the original parties." 14B Charles Alan Wright, Arthur R. Miller, Edward H,. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3723 (3d ed. 1998 & 2007 Supp.)(collecting cases). See, Caterpillar Inc. v. Lewis, 519 U.S. 61, 67 n.1 (1996), citing Wichita RR & Light Co. v. Public Util. Comm'n of Kansas, 260 U.S. 48, 54 (1922); Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 462 (1980); Evra Corp. v Swiss Bank Corp.,673 F.2d 951, 959-60 (7th Cir. 1982).

## UNDISPUTED FACTS

The following statement of facts are taken from the parties' statements of undisputed facts, the responses and replies thereto, and the evidence submitted in support.

Community Medical Center of Western Illinois, Inc. ("CMC") operates a hospital in Monmouth, Warren County, Illinois. Alliance Imaging is a provider of diagnostic medical imaging services such as Magnetic Resonance Imaging (MRI).

The two parties entered into an MRI services Agreement ("Agreement"), drafted by Alliance, in April of 2001. The Agreement includes a provision entitled "Exclusivity", which states that CMC "agrees to use Alliance solely for all of its mobile MRI needs." The Agreement was explicitly integrated in § 7.6, and requires any modification to be in writing. In § 7.7, the parties agreed that the Agreement was binding on the parties and their successors and assigns.

The Agreement defines the length of its term in Schedule A, appended to the Agreement. Paragraph 4 of Schedule A provides that the term of the Agreement is 48 months, beginning on the date on which services begin; a space for designating the "expected" beginning date was left blank, but the parties agree that services began on May 11, 2001. Hence, the original term of the Agreement would terminate on May 11, 2005. Paragraph 4 concludes by setting out the procedure for renewal and termination of the Agreement, as follows:

> After each term, this Agreement will automatically renew for successive terms unless either party notifies the other to the contrary in writing at least 180 days prior to the scheduled expiration. In the event this Agreement terminates and [CMC] continues to accept service, the terms and conditions of this Agreement shall apply to the provision of services.

In late January 2004, the parties began negotiations to amend the Agreement. The negotiations resulted in Addendum A ("Addendum"), which revised the Agreement in three ways. The first change relates to scheduling; the Addendum provides that "Schedule A, Item 3, Scheduling, the first sentence, is *changed* to read..." The second change relates to the days of service; the Addendum states "Schedule A, Item 3.a. Additional Day of Service, is *added* to the Agreement to read..." [emphasis added to the contractual quotations in this paragraph].

3

The third item, and the one crucial to this case, relates to the term of the Agreement. The Addendum reads: "Schedule A. Item 4.a. Term Extension, is ***added*** to the Agreement to read: The term of this Agreement is extended for twelve (!2) months from the current expiration date of May 11, 2005." [emphasis added].

Directly above the parties' signatures on the Addendum appears the following statement: "Except as herein above provided, no other change, amendment or modification of the Agreement is hereby intended or implied."

CMC interpreted the Addendum as altering the term specified in the original Agreement from 48 months to 12 months. Based on that interpretation, CMC served a notice on Alliance on November 8, 2006, indicating its intent to terminate the Agreement effective May 11, 2007. On April 12, 2007, Community Medical ceased operations and sold substantially all of its assets to OSF.

Alliance rejected the termination notice, based on its interpretation of the Addendum as simply extending the original term by 12 months but not amending the 48 month term for future renewals. Alliance asserts that the Agreement had renewed for a new four year term when Alliance did not serve a termination notice at least 180 days before May 11, 2006.

CMC filed a declaratory judgment action in Warren County, Illinois, seeking a declaration that the Addendum had modified the term provision of the original Agreement from 48 months to 12 months. Alliance removed the case to this Court on the basis of diversity jurisdiction. In an amended complaint filed Oct. 30, 2007, CMC contended that it was excused from further contractual performance because of the sale of its assets to OSF. Alliance responded by filing a third party action against OSF seeking the same declaration regarding the meaning of the Addendum. In its

Answer to the third party complaint, OSF took the same position as CMC regarding the contract documents.

Alliance filed the instant motion for partial summary judgment against CMC and OSF, which is now fully briefed. CMC then filed the instant motion for summary judgment, which is also fully briefed. Both motions are based on the same issue of contract interpretation.

## GOVERNING LAW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

Under Illinois[1] law, the primary object in construing a contract is to give effect to the parties' intention. Gallagher v. Lenart, 874 N.E.2d 43, 58 (Ill. 2007); Virginia Surety Co. v. Northern Ins. Co. of New York, 866 N.E.2d 149 (Ill.2007). The intention or understanding the parties, when there is a written contract in evidence, must be determined from the language of the contract itself, Rakowski v. Lucente, 472 N.E.2d 791, 794 (Ill.1984), considering first the plain and ordinary meaning of the contractual language, which is the best indication of those intentions. Gallagher, 874

---

[1] The parties have not challenged the application of Illinois law, and "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." Wood v. Mid-Valley Inc., 942 F.2d 425, 426-27 (7th Cir.1991); Citadel Group Ltd. v. Sky Lakes Medical Center, Inc. , -- F.Supp. 2d --, 2008 WL 1924958, *3, April 30, 2008 (N.D.Ill.).

N.E.2d at 58. See also, <u>Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prod., Inc.</u>, 212 F.3d 373, 378 (7th Cir. 2000)(contracts are to be construed as a whole, giving effect to all terms of the contract, in light of their ordinary and natural meanings).

"What the parties to a written contract may have understood as to the meaning of the language used is not admissible in evidence. <u>Rakowski</u>, 472 N.E.2d at 794. See also, <u>Air Safety, Inc. v. Teachers Realty Corp.</u>, 706 N.E.2d 882, 885 (Ill. 1999)("Traditional contract interpretation principles in Illinois require that an agreement ... must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.).

The court is not, therefore, to look for meaning beyond the four corners of the agreement unless the contractual language is ambiguous, which under Illinois law means that it is reasonably and fairly susceptible to more than one interpretation. See, <u>Thomas v. Pearle Vision, Inc.</u>, 251 F.3d 1132, 1137 (7th Cir. 2001); <u>Kaplan v. Shure Bros., Inc.</u>, 266 F.3d 598, 604-05 (7th Cir. 2001). "Only if the language is unclear and cannot be disambiguated without reference to facts that can be determined only by means of a trial...is there any reason to burden the parties with a trial on the meaning of the contract." <u>In re Comdisco, Inc.</u>, 434 F.3d 963, 968 (7th Cir. 2006). See, <u>Central Illinois Light Co. v. Home Ins. Co.</u>, 821 N.E.2d 206, (Ill.2004)(an ambiguity will be found if the language is "obscure in meaning through indefiniteness of expression").

Whether a contract is ambiguous is a question of law. <u>Patridge v. J.K. Harris & Company</u>, -- F.3d --, 2008 WL 2224800, May 28, 2008 (7th Cir.); <u>Barnett v. Ameren Corp.</u>, 436 F.3d 830, 833 (7th Cir. 2006). "A contract's meaning is a matter of law, and where there is no contractual ambiguity, there is no resort to extrinsic evidence, hence no factual dispute to preclude summary

6

judgment. Unless patent or latent ambiguity can be proven, extrinsic evidence is not proper to stave off summary judgment." Cherry v. Auburn Gear, Inc., 441 F.3d 476, 481 (7th Cir. 2006)(internal quotations omitted). See also, Echo Inc. v. Whitson Co., 121 F.3d 1099, 1104 (7th Cir. 1997)( Where a contract is unambiguous, its interpretation is a question of law); First Ins. Funding Corp. v. Fed. Ins. Co., 284 F.3d 799, 804 (7th Cir. 2002)(same).

In determining whether a contract is unambiguous, the contract should be read as a whole so that all its words are considered in the context in which they are used, and all parts are given effect. Gallagher, 874 N.E.2d at 58; Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 565 (7th Cir. 1995). It is "well established that preliminary negotiations to a contract are generally merged into the final written agreement and that the agreement is presumed to include all material terms." Citadel Group Ltd. v. Sky Lakes Medical Center, Inc. , -- F. Supp. 2d --, No. 06C6162, 2008 WL 1924958, 3, April 30, 2008 (N.D. Ill.), quoting Lewis, M.D. v. Loyola Univ. of Chi., 500 N.E.2d 47, 50 (Ill.App. 1986). A court should not strain to find an ambiguity where none exists. Hobbs v. Hartford Ins. Co., 823 N.E.2d 561, 564 (Ill.2005); McKinney v. Allstate Ins. Co., 722 N.E.2d 1125 (Ill. 1999).

A contract is not ambiguous simply because the parties disagree about its meaning. Central Illinois Light Co., 821 N.E.2d 206; Johnstowne Centre P'ship v. Chin, 458 N.E.2d 480 (Ill.1983).

Contracts are presumed to include all material terms, and no words are to be added that change the meaning expressed in the language of the contract. GNB Battery Tech, Inc. v. Gould, Inc., 65 F.3d 615, 622 (7th Cir. 1995). There is, in other words, "meaning in a party's failure to include a term." AGT Crunch Chicago, LLC v. 939 North Ave Collection, LLC, -- F. Supp. 2d --, No. 07C2986, 2008 WL 753951, March 18, 2008 (N.D. Ill.).

Where contract language is found to be ambiguous, the language is to be construed against its drafters. See, <u>Farmers Auto. Ins. Ass'n v. Rowland</u>, 883 N.E.2d 625, 626 (Ill.App.2008); <u>Menke v. Country Mutual Ins. Co.</u>, 401 N.E.2d 539 (Ill.1980). In the absence of ambiguity, the plain meaning of the words is to be accorded. <u>Hobbs</u>, 823 N.E.2d at 564; <u>Central Illinois Light Co.</u>, 821 N.E.2d 206; <u>Nat'l Fire Ins. Co. v. Kilfoy</u>, 874 N.E.2d 196, 201 (Ill.App.2007).

## APPLICATION

The plain language of the Addendum illustrates that no change was made to the renewal/termination provision. First, as emphasized above in the quotations from the Addendum, the provision extending the term by 12 months was "added" to the Agreement, unlike the provision about scheduling, which expressly states that it is a *change* to the Agreement. The difference in the choice of words must denote some significance. Adding a 12 month term does not somehow modify the automatic renewal and/or the termination procedures set out in the Agreement.

Second, the Addendum is completely void of any language that refers to the provision calling for automatic renewal for 48 months. In order to conclude that the parties intended to permanently change the renewal term from 48 months to 12 months, words would have to be added to the Addendum that the parties did not include. All the disputed language accomplished was adding a single, one-year term to the original 48 months. It did not delete or alter the 48 month language in the Agreement.

Third, Plaintiff's assertion that the language is ambiguous is essentially based on the fact that the parties disagree about its meaning. That alone does not create ambiguity. Nor need the contract be construed against the drafter, because there is no ambiguity in the language of the Addendum. These arguments are both rejected as inconsistent with the law cited above.

Next Plaintiff argues that implicit in the original contract was the requirement of CMC's continued existence; once it ceased operation, its performance under the contract was excused. But as Defendant notes, CMC sold its operations to OSF. The original Agreement provides that the Agreement is binding on the parties and their successors and assigns. This demonstrates the intent that contractual obligations continue beyond a sale by either party. At this point in the litigation and on the record before me, I cannot say with certainty whether it is CMC or OSF that is obligated under the Agreement. What I can say, however, is that the record does not justify entry of judgment against the Defendant; this factual uncertainty would only bear on the issue of damages, not liability.

I therefore conclude that the Addendum is unambiguous. All it did was add 12 months to the original term of the Agreement. Consideration of extrinsic evidence to alter or add to that interpretation is therefore legally impermissible. Without taking into consideration that extrinsic evidence, Plaintiff's argument fails. Plaintiff's motion for summary judgment is therefore denied.

I find that the plain language of the Agreement, as modified by the Addendum, means that the Agreement automatically renewed for a term of 48 months when notice was not given in a timely fashion. Accordingly, Defendant's motion for partial summary judgment is granted.

## CONCLUSION

As stated herein, the Defendant's Motion for partial summary judgment (#16) is granted, and Plaintiff's cross motion for summary judgment (#23) is therefore denied.

This case is set for a telephone conference on June 24, 2008 at 10:30 a.m., at which time the parties are to be prepared to discuss the claims and defenses that remain in this case, as well as a schedule for resolving those claims.

ENTERED ON  June 6, 2008

                        s/ John A. Gorman

                      JOHN A. GORMAN
            UNITED STATES MAGISTRATE JUDGE